COMMONWEALTH of Pennsylvania, Appellee

v.

Jeremy Dylan FOWLER, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 30, 2006.

Filed July 23, 2007.

David A. Schroeder, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: ORIE MELVIN, McCAFFERY, and JOHNSON, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Jeremy Dylan Fowler, appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] On appeal, Appellant challenges the legality of his original sentence imposed on April 12, 2001, following his guilty plea to violations of The Controlled Substance, Drug, Device and Cosmetic Act. Appellant also seeks 25 months' credit for time served in the Erie County Drug Treatment Court Program. For the reasons set forth below, we hold that Appellant's challenge to his original sentence is untimely. Additionally, we determine that the sentencing court acted

1. 42 Pa.C.S.A. §§ 9541–46.

well within its discretion in denying credit for time served under the facts of this case. Accordingly, we affirm.

¶ 2 The underlying facts and procedural history in this matter were previously recounted by this Court on direct appeal as follows:

Appellant was arrested on December 22, 2000, for selling heroin to an undercover agent.[2] A search warrant was issued for his residence. The search revealed six (6) grams of marijuana, five and one-half (5½) grams of marijuana seeds, and various drug paraphernalia. On April 12, 2001, Appellant pled guilty to five (5) counts of possession of a controlled substance with intent to deliver (heroin),[ ] one (1) count of possession of a controlled substance (marijuana),[ ] and two (2) counts of possession of drug paraphernalia.[ ] At his request, Appellant was admitted into [d]rug [t]reatment [c]ourt. The court sentenced Appellant to fifteen (15) years' intermediate punishment, beginning with ninety (90) days' electronic monitoring (restrictive intermediate punishment), forty (40) years' probation to be served consecutively to the restrictive intermediate

punishment, fifty (50) hours' community service, plus court costs.[3], [4]

On May 6, 2003, the court revoked Appellant's intermediate punishment for twenty-one (21) violations of certain technical conditions of his treatment[5] and imposed [an aggregate] sentence of four (4) to twenty (20) years' imprisonment, plus twenty-five (25) years' probation to be served consecutively to the term of imprisonment. [6] On May 16, 2003, Appellant filed a motion to modify sentence[,] which the court denied on May 19, 2003. On June 9, Appellant filed [a] notice of appeal. On September 22, 2003, this Court dismissed the appeal as untimely.

On October 1, 2003, Appellant filed a petition pursuant to the [PCRA], seeking leave of court to reinstate his appellate rights *nunc pro tunc.* The court granted the petition. On October 31, 2003, Appellant filed [a] timely notice of appeal.

*Commonwealth v. Fowler,* No. 1971 WDA 2003, unpublished memorandum at 1–3, 860 A.2d 1127 (Pa.Super. filed July 26, 2004). On direct appeal, Appellant chal-

---

**2.** On five separate occasions between July 28, 2000, and December 22, 2000, Appellant imported heroin from New York City and sold it to an undercover agent of the Pennsylvania Office of the Attorney General.

**3.** Prior to accepting Appellant's guilty plea, the court reviewed with Appellant the maximum aggregate sentence for the crimes to which Appellant intended to plead guilty: seventy-seven (77) years, thirty (30) days' incarceration, plus $1,255,500.00 in fines. ( [Notes of Testimony ("N.T.")] Plea and Sentencing, 4/12/01, at 6–7).

**4.** Appellant did not move to withdraw his plea, did not file post-sentence motions and did not file a direct appeal.

**5.** Appellant failed to attend treatment as directed, failed to abstain from the possession and consumption of alcohol, failed to abstain

from the possession and consumption of controlled substances, and failed to submit urine samples as directed.

**6.** The Honorable William R. Cunningham presided over Appellant's guilty plea and sentencing hearing in drug treatment court. Judge Cunningham then supervised Appellant's case and saw him on a weekly basis from April 2001 through the revocation hearing on May 6, 2003, or approximately twenty-five months. (Trial Court Opinion, dated July 28, 2003, at 8). Upon revocation of Appellant's intermediate punishment, the trial court granted 255 days of credit for time served. (Intermediate Punishment Revocation Sentence, filed 5/6/03; Docket # 14). The record does not contain an explanation of the specific dates credited.

lenged the trial court's revocation of his intermediate punishment sentence and re-sentence to total confinement. Appellant argued his sentence was manifestly excessive and clearly unreasonable because his violations were strictly technical and did not involve a new criminal offense. Appellant did not challenge his guilty plea or the original sentence imposed on April 12, 2001. On July 26, 2004, this Court affirmed Appellant's judgment of sentence. *See id.* Appellant filed an Application for Reconsideration and Reargument on August 6, 2004, which this Court denied on September 30, 2004.

¶ 3 On February 25, 2005, Appellant filed a Motion to Correct Record for Pre-sentence Commitment Credit seeking credit for the time he spent in rehabilitation facilities as part of the Erie Drug Treatment Court Program. Before the trial court ruled on this motion, Appellant filed a *pro se* PCRA petition on September 19, 2005, which included his request for time credit as well as other claims purporting to challenge his guilty plea and the legality of his original sentence imposed in 2001. The court appointed current counsel for Appellant, who filed a supplement to Appellant's PCRA petition on October 27, 2005.

¶ 4 On February 10, 2006, Judge Cunningham presided over an evidentiary hearing on Appellant's motion for time credit, which the court treated as Appellant's second petition for PCRA relief. The PCRA court issued a notice of intent to dismiss Appellant's PCRA petition on March 1, 2006. In that notice, the PCRA court addressed Appellant's motion for time credit as well the issues Appellant raised in his September 19, 2005 petition and counsel's supplemental petition. On March 22, 2006, the court issued an order denying PCRA relief.

¶ 5 Appellant filed a timely notice of appeal and now raises the following four questions for our review:

1. Whether the [PCRA] court erred in denying PCRA relief in misapplying the applicable standard upon finding the PCRA [petition] to be [ ] Appellant's third PCRA petition?

2. Whether the [PCRA] court erred in finding that [ ] Appellant's challenges to the original sentences were untimely, waived and/or previously litigated?

3. Whether the [PCRA] court erred in finding [ ] Appellant's challenges to his revocation sentence were without merit?

4. Whether the [PCRA] court erred in denying [ ] Appellant time credit for the time served in court-ordered in-patient treatment programs wherein his liberty was restrained so as to constitute a circumstance sufficiently similar to incarceration as to mandate the provision of time credit?

(Appellant's Brief at 2).

¶ 6 Our standard of review of a trial court's denial of PCRA relief is limited to determining whether the order is supported by the record evidence and is free of legal error. *Commonwealth v. Liebensperger,* 904 A.2d 40, 44 (Pa.Super.2006); *Commonwealth v. Yakell,* 876 A.2d 1040, 1042 (Pa.Super.2005). Our scope of review is limited to the PCRA court's factual findings and the evidence of record. *Commonwealth v. Duffey,* 585 Pa. 493, 502, 889 A.2d 56, 61 (2005). We grant great deference to the PCRA court and will not disturb findings supported by the certified record. *Commonwealth v. Sampson,* 900 A.2d 887, 890 (Pa.Super.2006), *appeal denied,* 589 Pa. 720, 907 A.2d 1102 (2006).

¶ 7 Preliminarily, we note that the timeliness requirements of the PCRA are man-

datory and jurisdictional in nature. 42 Pa.C.S.A. § 9545(b); *Commonwealth v. Robinson,* 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003). All PCRA petitions must be filed within one year of the date a judgment of sentence becomes final unless the petitioner pleads and proves that (1) there has been interference by government officials in the presentation of the claim; or (2) there exists after-discovered facts or evidence; or (3) a new constitutional right has been recognized. 42 Pa.C.S.A. § 9545(b)(1)(i-iii); *Robinson, supra* at 507, 837 A.2d at 1161.

■ ¶ 8 If a petition is not filed within the one-year time frame, the courts lack jurisdiction to grant relief unless the petitioner can plead and prove that one of the three statutorily-enumerated exceptions to the time-bar applies. *Id.; Commonwealth v. Gallman,* 838 A.2d 768, 774–775 (Pa.Super.2003). A petition invoking one or more of these exceptions must be filed within sixty days of the date the claim first could have been presented. 42 Pa.C.S.A. § 9545(b)(1) and (b)(2). The petitioner has the burden to plead in the petition and subsequently to prove that an exception applies. *Commonwealth v. Beasley,* 559 Pa. 604, 609, 741 A.2d 1258, 1261 (1999). "[A]llegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA." *Commonwealth v. Pollard,* 911 A.2d 1005, 1008 (Pa.Super.2006) (quoting *Commonwealth v. Wharton,* 584 Pa. 576, 588, 886 A.2d 1120, 1127 (2005)).

¶ 9 In his first issue on appeal, Appellant asserts that his motion for time credit should not have been treated as a PCRA petition by the trial court. Appellant claims that the trial court also erred in addressing his motion as a second PCRA petition and Appellant's September 19,

2005 petition as his third PCRA petition. We agree, in part.

¶ 10 "It is now well[-]established that a PCRA petition brought after an appeal *nunc pro tunc* is considered [an] appellant's first PCRA petition, and the one-year time clock will not begin to run until this appeal *nunc pro tunc* renders his judgment of sentence final." *Commonwealth v. O'Bidos,* 849 A.2d 243, 252 n. 3 (Pa.Super.2004) (citing *Commonwealth v. Karanicolas,* 836 A.2d 940 (Pa.Super.2003); *Commonwealth v. Lewis,* 718 A.2d 1262 (Pa.Super.1998)). It is equally well-settled that "the PCRA provides the sole means for obtaining collateral review, and that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition." *Commonwealth v. Johnson,* 803 A.2d 1291, 1293 (Pa.Super.2002) (citation omitted) (concluding the appellant's motion to vacate sentence qualified as a PCRA petition). *See also Commonwealth v. Evans,* 866 A.2d 442 (Pa.Super.2005) (concluding motion for reconsideration or modification of sentence required treatment under the PCRA); *Commonwealth v. Beck,* 848 A.2d 987, 989 (Pa.Super.2004) (holding collateral challenge to legality of sentence for failure to credit for time served must be brought under the PCRA); *Commonwealth v. Guthrie,* 749 A.2d 502, 503 (Pa.Super.2000) (holding motion to correct illegal sentence would be treated as PCRA petition where the appellant did not file timely post-sentence motions or a direct appeal).

■ ¶ 11 In the case *sub judice,* the trial court granted Appellant's request for an appeal *nunc pro tunc.* Appellant's judgment of sentence from the intermediate sentence revocation became final on November 1, 2004, or thirty days from this Court's denial of his application for recon-

sideration and reargument.[7] Appellant filed his motion for time credit on February 25, 2005, and his PCRA petition on September 19, 2005. Because the trial court had not yet ruled on Appellant's motion before he filed his September 19, 2005 petition, and both the motion and the *pro se* petition were filed within the one-year timeliness requirement, they will be combined and addressed together as Appellant's first PCRA petition for purposes of this appeal.

¶ 12 In his second issue presented, Appellant purports to challenge the legality of his original sentence imposed on April 12, 2001. Relying upon *Commonwealth v. Everett,* 277 Pa.Super. 323, 419 A.2d 793 (1980), Appellant maintains that his original sentence was illegal because the sentencing court failed to place its reasons for the sentence on the record, and that the issue is cognizable under the PCRA. (Appellant's Brief at 8–9). Appellant insists that the PCRA court erred in concluding that Appellant's challenge to his original sentence was untimely or that it was waived, because a challenge to the legality of a sentence cannot be waived. Finally, Appellant baldly asserts ineffective assistance of counsel for failing to litigate the claims set forth in his PCRA petition. Appellant's claims merit no relief.

◼ ¶ 13 "[A] court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition." *Commonwealth v. Berry,* 877

A.2d 479, 482 (Pa.Super.2005) *(en banc),* *appeal denied,* 591 Pa. 688, 917 A.2d 844 (2007). "A sentence is illegal where a statute bars the court from imposing that sentence" or where the sentence subjects a defendant to double jeopardy. *Id.* at 483 (citations omitted). "[A]lthough legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto." *Beck, supra* at 989 (quoting *Commonwealth v. Fahy,* 558 Pa. 313, 329, 737 A.2d 214, 222 (1999)); *Guthrie, supra* at 503–04 (quoting same).

◼ ¶ 14 In addition, our Court has stated that "[intermediate punishment] revocation does not materially alter the underlying conviction such that the period available for collateral review must be restarted." *Commonwealth v. Anderson,* 788 A.2d 1019, 1021 (Pa.Super.2001).[8] "[W]here a new sentence is imposed at [an intermediate punishment] revocation hearing, the revocation hearing date must be employed when assessing finality under [42 Pa.C.S.A.] § 9545(b)(3) to any issues directly appealable from that hearing." *Id.* "Therefore, the time for seeking PCRA relief following ... the imposition of a new sentence runs for one year from the conclusion of direct review of that new sentencing order, **but only as to the issues of the validity of the revocation proceedings and the legality of the new sentence.**" *Id.* at 1022 (emphasis in original). *See also Commonwealth v. Cappello,* 823 A.2d 936, 940 (Pa.Super.2003) (extending *Anderson* rationale in PCRA challenge to revocation of parole).

---

**7.** This Court denied Appellant's motion for reconsideration on September 30, 2004. Because October 30, 2004, which was thirty days later, fell on a Saturday, Appellant had until the following business day, Monday, November 1, 2004, to timely file his petition for permission to appeal to our Supreme Court. *See* 1 Pa.C.S.A. § 1908; Pa.R.A.P. 1113.

**8.** In this context, our Court treats intermediate punishment similarly to probation. *Commonwealth v. Fusselman,* 866 A.2d 1109, 1110 n. 1 (Pa.Super.2004), *appeal denied,* 584 Pa. 691, 882 A.2d 477 (2005) (citing *Commonwealth v. Lehman,* 851 A.2d 941 (Pa.Super.2004); *Commonwealth v. Philipp,* 709 A.2d 920 (Pa.Super.1998); Pa.R.Crim.P. 708).

¶ 15 Instantly, Appellant did not move to withdraw his guilty plea, did not file post-sentence motions challenging his original sentence, and did not file a direct appeal. Appellant's original judgment of sentence became final thirty days after April 12, 2001, when the court entered its original sentence and the time for taking a direct appeal expired. *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.Crim.P. 720(A)(3). Hence, Appellant had until May 13, 2002,[9] to file a timely PCRA petition challenging his original sentence. Appellant failed to meet this deadline and did not file a PCRA petition raising this claim until September 19, 2005. Moreover, Appellant has failed to assert any of the Section 9545 exceptions noted above; therefore, his challenge is untimely. *See Beck, supra; Anderson, supra.*

¶ 16 Furthermore, the case upon which Appellant relies, *Everett, supra,* is inapposite. *Everett* involved a petition brought under the Post Conviction Hearing Act, the predecessor statute of the PCRA, and filed before the 1995 amendments to the PCRA, which added the jurisdictional time limit. Additionally, the trial court in that case had imposed an illegal "alternate" sentence, which had been proscribed by the Sentencing Code. *Id.* at 794. **In a footnote,** this Court then observed that in the interest of judicial economy, because the sentencing court had failed to place its reasons for the sentence on the record as required, it was to do so on remand. *Id.* at n. 4. While a sentencing court is required to place its reasons for a sentence on the record, *see* 42 Pa.C.S.A. § 9721(b) (sentencing court must state its reasons for sentence on the record), the failure to do so does not make the sentence imposed an illegal one. *See Commonwealth v. McAfee,* 849 A.2d 270, 274–75

(Pa.Super.2004) (observing claim that court considered improper factors and failed to state its reasons for sentencing in open court is a challenge to the discretionary aspects of sentencing). Challenges to the discretionary aspects of sentencing are not cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2)(vii); *Evans, supra* at 444–45.

¶ 17 Similarly, Appellant's boilerplate assertion of ineffective assistance of prior counsel is unavailing. Appellant does not claim that he requested counsel to file a direct appeal from his original judgment of sentence. Moreover, Appellant offers no pertinent discussion or relevant authority in support of his bald allegations. *See Pollard, supra* (citing *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201 (2000) for proposition that an untimely PCRA petition is properly dismissed absent proof of applicability of time-bar exceptions). *See also Commonwealth v. Thomas,* 560 Pa. 249, 256, 744 A.2d 713, 716 (2000), *habeas corpus granted in part by Thomas v. Beard,* 388 F.Supp.2d 489 (E.D.Pa.2005) (stating claims of counsel's ineffectiveness must be pled with specificity); *Commonwealth v. Price,* 876 A.2d 988, 995 (Pa.Super.2005), *appeal denied* 587 Pa. 706, 897 A.2d 1184 (2006) (explaining waiver of claims available on direct appeal cannot be overcome absent full, layered ineffectiveness of counsel analysis). Accordingly, Appellant's second issue merits no relief.

¶ 18 In his third issue, Appellant presents a rambling litany of alleged errors committed by the trial court when it revoked Appellant's intermediate punishment and imposed a purportedly illegal sentence. To the extent Appellant is challenging his guilty plea and the original sentence imposed on April 12, 2001, his

**9.** The actual deadline, May 12, 2002, fell on a Sunday. *See* 1 Pa.C.S.A. § 1908.

claims are untimely.[10] *See Beck, supra; Anderson, supra.* To the extent Appellant challenges the revocation and sentence imposed on May 6, 2003, this Court has previously addressed those claims on direct appeal. And to the extent Appellant claims he is entitled to a new trial, his claim is waived.

■ ¶ 19 PCRA relief is not available for alleged errors that have been "previously litigated" or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2). This section prevents the relitigation of the same legal ground under alternative theories or allegations. *Commonwealth v. Collins,* 585 Pa. 45, 56, 888 A.2d 564, 570 (2005); *Commonwealth v. Derk,* 913 A.2d 875, 882 (Pa.Super.2006). Additionally, an issue is not cognizable under the PCRA where the petitioner simply attempts to relitigate, without couching in terms of ineffective assistance, a claim that has already been deemed reviewed on direct appeal. *See Commonwealth v. Jones,* 590 Pa. 202, 217, n. 10, 912 A.2d 268, 277, n. 10 (2006). If the claims upon which a petitioner seeks relief were previously litigated, then our inquiry ends and the petitioner is not entitled to relief. 42 Pa. C.S.A. § 9543(a)(3). An issue is considered waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding.

42 Pa.C.S.A. § 9544(b); *Commonwealth v. Williams,* 900 A.2d 906, 908–09 (Pa.Super.2006) (*en banc* ).

■ ¶ 20 On direct appeal, Appellant challenged the validity of his sentence where the trial court imposed total confinement even though Appellant had not committed any new crimes and his violations were technical in nature. In its memorandum opinion, this Court addressed the authority of the sentencing court to impose a sentence of total confinement upon revocation of an intermediate punishment sentence. *See Fowler, supra* at 5–6 (reiterating sentencing alternatives available at revocation are the same as alternatives available at time of initial sentencing and technical violations are sufficient to trigger revocation). Accordingly, Appellant's challenge to the court's authority to sentence him has been previously litigated.

■ ¶ 21 Also in this appeal, for the very first time, Appellant claims he entered into a negotiated plea agreement when he signed the Statement of Understanding of Rights Prior to Entering Drug Court, which provides that dismissal from the program would result in his case being re-listed for trial.[11] Appellant asserts that he entered into his guilty plea in 2001 with the understanding that he had the right to a new trial on the underlying drug charges if he could not satisfactorily complete the drug treatment program. Thus, according to Appellant, the trial court lacked jurisdiction to re-sentence him on the revocation and he is entitled to a new trial. We

---

10. Appellant complains the trial court erred by a) failing to adequately state its reasons for the original sentence on the record; b) failing to indicate it had considered the sentencing guidelines; c) imposing an illegal sentence of fifteen years' restrictive punishment, and d) concluding it had jurisdiction to re-sentence after the revocation; that Appellant was coerced into pleading guilty to charges with-

drawn at his preliminary hearing; and that prior counsel was ineffective for failing to raise all of these claims. (Appellant's Brief at 11–25).

11. A portion of Appellant's Statement of Understanding of Rights as well as the pertinent exchange in open court is reprinted *infra.*

note, however, that Appellant did not raise this issue at the revocation hearing, in his motion to modify his sentence, on direct appeal, or in his PCRA petition. Therefore, we determine that Appellant has waived this issue. *See Williams, supra.*

¶ 22 In his final issue on appeal, Appellant insists that he is entitled to 25 months' credit for time served in the drug treatment court program. Appellant argues that he is entitled to this credit because the court ordered his participation in these programs and because the Pennsylvania Code specifically directs that each day spent in the program must be considered the equivalent of total confinement.[12] In the alternative, Appellant asserts he is entitled to credit for time he spent in inpatient treatment facilities as ordered by the trial court. (Appellant's Brief at 26). Appellant's claim is unavailing.

¶ 23 "[A] challenge to the trial court's failure to award credit for time spent in custody prior to sentencing involves the legality of sentence and is cognizable under the PCRA." *Commonwealth v. Menezes,* 871 A.2d 204, 207 (Pa.Super.2005) (citing *Beck, supra* at 989). *See also Yakell, supra* at 1042–44 (reviewing PCRA court order granting petition for time credit in part and denying in part). It is now well-settled and

> essential that the [trial] court maintain the ability to incarcerate persons for whom intermediate punishment is no longer a viable means of rehabilitation. Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing.... [A] re[-]sentence may not exceed the statu-

tory limits of the sentence, including allowable deductions for time served.

*Commonwealth v. Serrano,* 727 A.2d 1168, 1170 (Pa.Super.1999) (citing and quoting 42 Pa.C.S.A. § 9773). We must accord the sentencing court's decision great weight because the judge is in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Marts,* 889 A.2d 608, 613 (Pa.Super.2005).

¶ 24 The sentencing code provides in relevant part as follows:

### § 9760. Credit for time served

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of conduct on which such a charge is based. Credit shall include credit for the time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1). "The principle underlying [Section 9760] is that a defendant should be given credit for time spent **in custody** prior to sentencing for a particular offense." *Commonwealth v. Hollawell,* 413 Pa.Super. 42, 604 A.2d 723, 725 (1992) (citation omitted) (emphasis added).

> The easiest application of [42 Pa.C.S.A. § 9760(1) ] is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would

---

**12.** Appellant relies upon 204 Pa.Code § 303.12(a)(4)(iv) for this argument. This subsection specifically applies to "[offenders] assessed as not in need of drug or alcohol treatment." Because the drug treatment court assessed Appellant to be in need of treatment, the subsection does not apply.

be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where [the defendant] spent time [somewhere other] than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in a prison.

\* \* \*

The plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative **institution**....

*Commonwealth v. Kyle*, 582 Pa. 624, 632–33, 874 A.2d 12, 17 (2005) (citation omitted) (emphasis in original). "Courts have interpreted the word 'custody,' as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility." *Id.* at 634, 874 A.2d at 18.

▌ ¶ 25 "Intermediate punishment is an alternative to total confinement." *Commonwealth v. Stevenson*, 850 A.2d 1268, 1272 (Pa.Super.2004) *(en banc)* (citing 42 Pa.C.S.A. § 9721(a); *Commonwealth v. Wegley*, 574 Pa. 190, 191 n. 1, 829 A.2d 1148, 1149 n. 1 (2003)). Our Supreme Court has concluded that the Legislature intended imprisonment and intermediate punishment to be mutually exclusive and to be treated differently, noting:

the Legislature provides that nothing in this chapter shall be construed as creating an enforceable right in any person to participate in an intermediate punishment program in lieu of incarceration. 42 Pa.C.S.[A.] § 9812. Thus, the Legislature now clearly distinguishes between

incarceration, *i.e.*, imprisonment, and intermediate punishment.

*Commonwealth v. Koskey*, 571 Pa. 241, 247 n. 7, 812 A.2d 509, 514 n. 7 (2002) (quotation omitted). Generally, it is within the trial court's discretion whether to credit time spent in an institutionalized rehabilitation and treatment program as time served "in custody." *Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (Pa. 1991), *Commonwealth v. Mincone*, 405 Pa.Super. 599, 592 A.2d 1375 (1991) (en banc). In *Conahan, supra*, the Court specifically noted that the appellant had "voluntarily committed himself to inpatient custodial alcohol rehabilitation, which he successfully completed after devoting ninety-five continuous days towards overcoming his disease. We find that his successful completion of this custodial inpatient rehabilitation, which took place in three hospitals, ... is a sufficient 'institutional setting' as [previously] contemplated by this Court...." *Id.* at 203, 589 A.2d at 1109.

Clearly, our acceptance of this type of inpatient institutional rehabilitation in no way **entitles** one ... to a credit for such rehabilitative commitment **as of right**. Rather, it is only an express approval of credits for such commitment that the sentencing court in its discretion deems to be sufficient. Accordingly, we hold that the trial court ... acted well within its discretion in awarding [the appellant] a credit of thirty days for time served in inpatient institutional rehabilitation....

*Id.* at 204, 589 A.2d at 1110 (emphasis in original). *See also Commonwealth v. Tout–Puissant*, 823 A.2d 186, 189–90 (Pa.Super.2003) (holding two-week "Outmate program" included in one-year intermediate punishment sentence constituted custodial confinement where program required nighttime commitment in county

prison as well as daytime supervision by sheriff's department); *Yakell, supra* at 1042–43 (reiterating that the PCRA court is not required to give credit for time served on original sentence following a probation violation so long as the revocation sentence is less than the statutory maximum when added to the initial sentence).

¶ 26 Our Supreme Court has recently re-emphasized the following:

> When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Eichinger,* 591 Pa. 1, 31, 915 A.2d 1122, 1140 (2007) (citation omitted).

¶ 27 After hearing Appellant's testimony as well as that of an Erie County adult probation and parole officer familiar with the rehabilitation facilities involved in the case *sub judice,* the PCRA court determined as follows:

> Importantly, it was [Appellant] who requested the opportunity to participate in the Erie County Drug Court. [Appellant's] motivation, in part, was to avoid incarceration. [Appellant] faced sentencing for five different felony counts of delivering heroin to an undercover officer. The standard range of the sentencing guidelines for each of these offenses

called for incarceration, including the possibility of state incarceration.

> Equally as important was the fact [that Appellant's] participation in the Drug Court Program was voluntary. This [p]rogram is not a mandated program. Instead, it was [Appellant] who requested to participate. [Appellant] could opt out of the program at any time.

> [Appellant's] stay in three inpatient rehabilitation facilities was not so restrictive as to constitute custody. . . . At no time was [Appellant] locked-down. There were locks on the doors, the purpose of which was to prevent people from entering the facility but did not prevent people from leaving the facility. There were no bars on the windows. The fencing [of] the premises was for privacy and not [for] security purposes. There was nothing in place to prevent a resident from physically leaving the premises. If a resident attempted to leave the facility without permission, staff would not try to stop the person. Notably, people who were there as part of the Erie County Drug Court Program were treated no differently than any other resident.

(PCRA Court Opinion, dated March 1, 2006, at 13–14). Prior to his acceptance into the drug treatment court program, Appellant signed the following statement:

### DEFENDANT'S STATEMENT OF UNDERSTANDING OF RIGHTS PRIOR TO ENTERING DRUG COURT

I am the defendant in the within matter and I hereby state that I desire to enter drug court in this matter; that my entry into drug court is made voluntarily by me without any pressure or promise not reflected on this paper, and that I fully understand all of my rights in choosing to enter drug court.

* * *

I understand that if I am dismissed from the drug court program prior to satisfactory completion, my case will be listed for trial in the next term of criminal court and I will have to take my case to trial or enter a plea as if I had never been a participant in the drug court program.

I HAVE SIGNED THIS PAPER ONLY AFTER FIRST READING AND REVIEWING IT.

[Signed by Appellant, both attorneys and Judge Cunningham].

(Defendant's Statement, dated 4/12/01; Docket # 5). In addition, the following exchange took place in open court:

[PROSECUTOR] TRABOLD: Now, there are some somewhat peculiar rights and things you need to be aware of with regard to Drug Court. Essentially Drug Court amounts to you having to come into court, at the beginning once a week and then less so as you progress through the program, to explain your progress to the judge. You also have to obviously give random urine samples, and you have to generally go to the treatment that's been, for lack of a better word, prescribed for you. If you don't do any of these things, if you don't follow any of the requirements of the Drug Court team and the judge, you're exposing yourself to a variety of different sanctions, from fines and things like that all the way up to jail time and ultimately up to expulsion from the program. Expulsion from the program is the most severe sanction that we have, because it simply means that you will no longer be in Drug Court and your case will be handled as if you were never in Drug Court. **You will be sentenced on a revocation sentence by the judge, and you will in all likelihood, given the nature of the charges that you are**

**here on, you will be exposing yourself to lengthy prison times.**

* * *

Mr. Fowler, do you understand those rights? [APPELLANT]: Yes.

[PROSECUTOR] TRABOLD: Any questions?

[APPELLANT]: No.

* * *

[PROSECUTOR] TRABOLD: Have you had a chance to look at this statement of understanding of rights ... ?

[APPELLANT]: Yes. . . .

[PROSECUTOR] TRABOLD: Any questions about anything in these documents?

[APPELLANT]: No.

* * *

[PROSECUTOR] TRABOLD: Is that your signature at the bottom?

[APPELLANT]: Yes.

(N.T. Plea and Sentencing into Drug Court, 4/12/01, at 4–7) (emphasis supplied).

¶ 28 The record evidence clearly demonstrates Appellant voluntarily entered the drug treatment court program and understood the consequences of failing to adhere to the program requirements. By the time the trial court revoked Appellant's intermediate punishment for twenty-one violations, Judge Cunningham had supervised Appellant's treatment for approximately twenty-five months. Following revocation, the trial court was in the best position to assess whether to credit any time Appellant spent in rehabilitative treatment facilities. Appellant had misused and abused the many opportunities for rehabilitation without incarceration that the court had provided to him. The PCRA court declined to reward Appel-

lant's actions with credit for time served. The court's decision was entirely within its purview. *See Conahan, supra; Mincone, supra.* Upon thorough review, we conclude that the record evidence supports the PCRA court's determination. *See Yakell, supra.*

¶ 29 Based on the foregoing analysis, we have determined that Appellant's issues merit no relief. Accordingly, we affirm the PCRA court's order denying Appellant's first PCRA petition.

¶ 30 Order affirmed.